UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT D. YOUNG,

          Plaintiff,

    v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  14-cv-04084-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 19

*United States District Court*
*Northern District of California*

## INTRODUCTION

Plaintiff Robert D. Young ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  Dkt. Nos. 15, 19.  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion for the reasons set forth below.

## BACKGROUND

**A.**     **Contra Costa Health Services**

Plaintiff began treatment at Contra Costa Health Services on March 9, 2011, at which time he reported problems with panic attacks and agoraphobia.  AR 438.  On that date, a mental status examination by Richard Makman, M.D. revealed loud and somewhat pressured speech, an anxious and depressed mood, thinking centered on triggers of panic attacks, and fair insight/judgment.  AR 439-40.  He was diagnosed with panic disorder with agoraphobia.  AR 440.  His Global

Assessment of Functioning ("GAF") score was 50.[1]  Dr. Makman recommended that Plaintiff have medication management and individual counseling.  AR 440.  Paroxetine ("Paxil")[2] and Lorazepam[3] were prescribed.  AR 441.  However, on March 31, 2011, Plaintiff stated that the pharmacy was unable to fill his Paxil, and the Lorazepam only helped with sleep but not panic attacks.  AR 442.  He was advised to start Paxil and continue on Lorazepam.  AR 443.  By April 22, 2011, he had started Paxil, but was feeling "jittery."  AR 444.  His dose of Paxil was increased and Lorazepam was decreased.  AR 445.  On May 20, 2011, Plaintiff stated he was "okay," but he continued to have panic attacks/anxiety in situations when he was around other people.  AR 446.  A mental status examination revealed he was anxious.  AR 446.

On September 7, 2011, Plaintiff stated that his panic attacks were reduced.  AR 448.  He was advised to engage in more activities outside the home.  AR 448.  At a follow-up on November 2, 2011, Plaintiff reported that he continued to have some panic attacks.  AR 450.  He was continued on Paxil.  AR 451.  On March 14, 2012, Plaintiff reported having problems with his memory and forgetting appointments.  AR 452.

D.E. Hanlin, M.D., a board certified psychiatrist, began treating Plaintiff on May 21, 2012.  AR 454.  Plaintiff reported increasing problems with his memory; he could not remember where he is going or what he is supposed to be doing.  AR 454.  Dr. Hanlin diagnosed panic disorder and prescribed Paxil and Clonazepam ("Klonopin").[4]  AR 455.  On November 2, 2012, Plaintiff

---

[1] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job).  Diagnostic and Statistical Manual of Mental Disorders 4th Ed. ("DSM-IV"), p. 34.  However, the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, 2013 ("DSM-5") no longer uses GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores.  DSM-5, p. 16.

[2] Paxil is used to treat depression, obsessive-compulsive disorder ("OCD"), panic disorder, generalized anxiety disorder ("GAD"), and social anxiety disorder.  *PubMed Health*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011606/ (last visited June 3, 2015).

[3] Lorazepam is the generic brand of Ativan.  Lorazepam is a benzodiazepine that is used to treat anxiety.  *Id.* at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0001078/ (last visited June 3, 2015).

[4] Klonopin is a benzodiazepine medication used for the treatment of seizures, panic disorder, and anxiety.  *Id.* at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009677/ (last visited June 3, 2015).

2

reported increased problems with stress.  AR 456.  Dr. Hanlin diagnosed panic disorder and refilled his medications.  AR 457.

Dr. Hanlin completed a Mental Disorder Questionnaire Form at the request of the Social Security Administration ("SSA") on February 1, 2013.  AR 459-63.  He stated that Plaintiff has difficulty with his memory and easily forgets what he is doing and where he is going, and he relied on his girlfriend to remind him of appointments.  AR 459.  Plaintiff's symptoms included anxiety, panic attacks, anticipatory anxiety, and social avoidance, which prevented him from working for years.  AR 459.  Mental status findings included anxiousness, excessive worry, difficulty with memory, mildly pressured speech at times, and a history of hallucinations.  AR 460-61.  Dr. Hanlin opined Plaintiff had a limited ability to engage in activities of daily living: he relied on his girlfriend for assistance with his personal affairs and transportation, and he became anxious in social situations.  AR 461.  He was also limited in social functioning; he was avoidant of contacts with others.  AR 462.  Plaintiff also  had problems with concentration and task completion due to decreased attention related to anxiety.  AR 462.  Dr. Hanlin further opined Plaintiff had problems with adaptation based on evidence of difficulty maintaining appointments that demonstrated problems with regular work attendance.  AR 462.

On March 5, 2013, Plaintiff was diagnosed with panic disorder with agoraphobia that was, poorly controlled.  AR 465-66.  Paxil and Klonopin were continued.  AR 466.  Plaintiff was not seen again until June 5, 2013.  AR 479.  He described having unprovoked panic attacks of rapid onset with racing heart, difficulty breathing, and feeling overwhelmed and out of control.  AR 479.  A mental status examination was unremarkable for attitude, mood, affect, thought process, thought content, perceptual disturbance, orientation, memory, concentration, fund of knowledge, and intellect; the examination, however, also revealed rambling speech, poor insight/judgment, and poor impulse control.  AR 480-81.  Plaintiff was diagnosed with panic disorder by history and was ruled-out of GAD.  AR 481.  His March 5, 2013 GAF score was 58.[5]  AR 481.  He was prescribed

---

[5] A GAF score of 51-60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school

United States District Court
Northern District of California

1    Paxil, Trazodone[6] and Seroquel.[7]   AR 482.

2         At a follow-up on July 3, 2013, Plaintiff described ongoing anxiety and not wanting to

3    leave his home; he had not left for three days prior to his appointment.  AR 487.  He had

4    symptoms of excess sweating, increased heart rate, shaking, palpitations, and shortness of breath.

5    AR 487.  Plaintiff stated that he previously engaged in marijuana abuse, but was clean and sober

6    for years.  AR 487.  A mental status examination, conducted during the July 3, 2013 follow-up,

7    revealed fair speech at a slightly rapid pace, an anxious mood and affect, mild anxiety, not

8    depressed thought content, denies SI/HI thought process, linear insight, and poor insight and

9    judgment.  AR 487.  Plaintiff was prescribed Paxil, Trazodone, and Abilify.[8]  AR 488.  On August

10   14, 2013, Plaintiff stated that he had been unable to fill his medications and had worsening mood

11   and anxiety.  AR 491.  He continued to remain at home most of the time and described having

12   some anger outbursts.  AR 491.  A mental status exam was unchanged from the July 3, 2013 visit.

13   AR 491.  He was given assistance in applying for low-cost medications.  AR 492.

14        On October 14, 2013, Plaintiff described worsening anxiety due to financial problems.  AR

15   527.  He continued to have panic attacks when he went out and forgot to take his medications

16   unless his girlfriend reminded him.  AR 527.  A mental status examination revealed he was

17   "mildly fidgety" and walking in the waiting room, talked in a slightly loud voice, was anxious in

18   mood and affect, expressed mild anxiety, but was not depressed thought content, denied thoughts

19   of suicidal ideation/homicidal ideation ("SI/HI"), and showed poor insight and judgment.  AR

20   527.  The attending psychiatrist continued Paxil, Trazodone, and Abilify, and added Celexa.[9]  AR

21

22   _____

23   functioning (e.g.. few friends, conflicts with peers or co-workers).  DSM-IV, p. 34.
     [6] Trazodone is used to treat depression.  *PubMed Health*,
     http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012504/ (last visited June 3, 2015).

24   [7] Quetiapine ("Seroquel") is used to treat schizophrenia, bipolar disorder, and depression.  *Id.* at
     http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011909/ (last visited June 3, 2015).

25   [8] Aripiprazole ("Abilify") is used to treat nervous, motion, and mental conditions, including
     schizophrenia and bipolar disorder.  *Id.* at

26   http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0000157/ (last visited June 3, 2015).
     [9] Citalopram ("Celexa") is a selective serotonin reuptake inhibitor, which treats depression by

27   increasing the activity of serotonin in the brain.  *Id.* at
     http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009639/ (last visited June 3, 2015).

28                                                       4

528.  Despite taking his medication, at the next visit on November 14, 2013, Plaintiff had

unchanged symptoms.  AR 531.  Mental status findings were also unchanged.  AR 531.  His dose

of Celexa was increased.  AR 532.  On February 5, 2014, Plaintiff reported he was stressed due to

homelessness and financial instability.  AR 535.  He reported only fair appetite and energy, poor

concentration, and impulses to yell at times.  AR 535.  His mental status examination was again

unchanged.  AR 535.

**B.      Zoe Collins, Psy.D. – Consultative Psychologist**

Dr. Collins evaluated Plaintiff at the request of the Administrative Law Judge ("ALJ") on

January 8, 2014.  AR 500-06.  Dr. Collins observed Plaintiff as impulsive during testing, with loud

speech, difficulties with comprehension, difficulties expressing his ideas, a blunted affect, a

stressed mood, and poor boundaries.  AR 500.  He had a history of drug and alcohol use but was

clean since 1992.  AR 500.  Plaintiff stated he does not cook because he forgets what he is doing

and cannot manage his own appointments or get around on his own.  AR 501.  He also had

problems controlling his temper in public.  AR 501.  A mental status examination revealed

Plaintiff was casually dressed with neglected grooming and hygiene, no unusual movements or

psychomotor changes, difficulties following directions due to poor comprehension, rambling and

loud speech, a blunted affect, an anxious mood, disorganized thought processes, disorientation to

time, impaired memory, poor insight, and fair judgment.  AR 501.  He was oriented to person,

place, and situation, but not to time.  AR 501.

On the Wechsler Adult Intelligence Scale,[10] Plaintiff had a full scale IQ of 72.  AR 501.

His verbal comprehension score was 80; perceptual reasoning score was 77; working memory

score was 80; and processing speed score was 71.  AR 501.  On the Wechsler Memory Scale

("WMS-IV"), Plaintiff had extremely low scores in the immediate memory index, the delayed

memory index, and the auditory memory index, and had a borderline score in visual memory

---

[10] The Wechsler Adult Intelligence Scale (WAIS-IV) is a test designed to measure intelligence in adults and older adolescents.  Wechsler Adult Intelligence Scale, http://wechsleradultintelligencescale.com/  (last visited June 3, 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

index.  AR 502.  On the trail making test,[11] Plaintiff scored in the extremely low range on trail A and in the low average range on trail B.  AR 502.  Dr. Collins deemed Plaintiff's test scores valid. AR 501.  She diagnosed him with major depressive disorder.  AR 502.  Plaintiff's GAF score was 52.  AR 502.

Dr. Collins completed a Medical Source Statement of Ability to do Work-Related Activities ("Mental").  AR 504-06.  She opined that Plaintiff was markedly limited in the ability to make judgments on complex work-related decisions; moderately limited in the ability to make judgments on simple work-related decisions; moderately limited in the ability to understand and remember complex instructions; and moderately limited in the ability to carry out complex instructions due to poor capacity for abstraction, problems solving, and with memory.  AR 504. Dr. Collins also opined that Plaintiff was markedly limited in the ability to interact appropriately with the public, supervisors, and co-workers and in the ability to respond appropriately to changes in a routine work setting due to low frustration tolerance, poor emotional regulation, and depression.  AR 505.  Finally, Dr. Collins found that Plaintiff was unable to manage any benefits awarded to him.  AR 506.

## C.      Non-Examining State Agency Medical Consultants

Yew Yee Wong, M.D., a board certified psychiatrist, reviewed Plaintiff's file on April 16, 2013.  AR 58-68.  Dr. Wong opined Plaintiff was moderately limited in maintaining social functioning and in concentration, persistence, or pace.  AR 64.  Dr. Wong also opined that Plaintiff was moderately limited in the following: the ability to understand, remember, and carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to interact appropriately with the general public.  AR 66-67.

L. Colsky, M.D., a psychiatrist, reviewed Plaintiff's file on September 3, 2013, and found the exact same limitations as Dr. Wong did.  AR 76-79.

---

[11] The trail making test is a measure that assesses planning abilities and the ability to quickly shift attention from one thing to another.  AR 502.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On November 15, 2012, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on June 1, 2002.  AR 148-56.  On September 17, 2013, the SSA denied Plaintiff's claim, finding that he did not qualify for disability benefits.  AR 81-86.  Plaintiff subsequently filed a request for reconsideration, which was also denied.  AR 90-95.  On October 18, 2013, Plaintiff requested a hearing before an ALJ.  AR 96-98.  ALJ Katherine Loo conducted a hearing on March 27, 2014.  AR 31-57.  Plaintiff testified in person at the hearing and was represented by counsel, James Pi.  AR 31.  The ALJ also heard testimony from a vocational expert, Lawrence Hughes.  AR 52-56.

A.      **Plaintiff's Testimony**

Plaintiff was 58 years old at the time of hearing.  AR 35.  He was represented by counsel, James Pi.  AR 33.  No objections were made to the evidence in the file.  AR 34.  Plaintiff stated he has a General Education Degree ("GED") and went to school up to the 12th grade.  AR 37.  He testified that he is unable to work because he does not like being around people and gets panic attacks when he is out in public.  AR 37.  He also reported being argumentative with others.  AR 38.  Plaintiff does not like going out in public and stated that it was "really hard, getting here today."  AR 28.  He also described problems concentrating and comprehending things.  AR 38.  Plaintiff has panic attacks at least once a day.  AR 49.  Sometimes he gets very loud and "full of bull" when he has a panic attack; other times, he vomits, has the chills, and sweats.  AR 49-50.

Plaintiff was staying at a couple different places during the weeks leading up to his hearing: most of the time, he slept on the floor at his son's mother's house;  at other times, he was at a friend's house.  AR 35-36.  During the day, he watches television.  AR 44.  He also tried to take an online class at the library but could not complete it due to his mental problems.  AR 44, 48.  At night, he goes for walks when no one else is around.  AR 44.  His medications help with panic attacks, but only temporarily.  AR 41-42.  He continues to have panic attacks.  AR 52.  He reported not drinking alcohol for approximately two years and no drug use since the 1990's.  AR 47.

United States District Court
Northern District of California

1   Plaintiff stated he has a valid driver's license and can drive.  AR 36.  However, a friend

2   drove him to the hearing.  AR 36.  He also testified that he needs glasses, but he could not

3   remember the last time he had his eyes checked.  AR 36.

4   **B.      Vocational Expert's Testimony**

5   Mr. Hughes, the vocational expert, testified that an individual of Plaintiff's age, education,

6   and work history – who was limited to simple, routine tasks, occasional interactions with co-

7   workers and supervisors, and no public contact – could work as a machine feeder, an industrial

8   cleaner, or a vehicle cleaner.  AR 53-54.  However, an individual could not perform any work if he

9   was limited to simple, routine tasks, superficial interactions with coworkers and supervisors, no

10  public contact, and no work on a team.  AR 54.  Finally, the vocational expert stated that an

11  individual who had a marked limitation in the ability to respond to usual work situations and to

12  changes in a routine work setting – for at least 20-percent of the time – also could not work.  AR

13  54-55.  The vocational expert stated his testimony was consistent with the Dictionary of

14  Occupational Titles ("DOT") with regard to the physical requirements of a job, but the superficial

15  interaction limitations are not covered in the DOT.  AR 54-55.

16  **C.      The ALJ's Findings**

17  The regulations promulgated by the Commissioner of Social Security provide for a five-

18  step sequential analysis to determine whether a Social Security claimant is disabled.[12]  20 C.F.R.

19  § 404.1520(a).  The sequential inquiry is terminated when "a question is answered affirmatively or

20  negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer*

21  *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential

22  inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r*

23  *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the

24  Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v.*

25

26

27  [12] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d) (1)(A).

28

8

1    *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

2         The ALJ must first determine whether the claimant is performing "substantial gainful

3    activity," which would mandate that the claimant be found not disabled regardless of medical

4    condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ

5    determined that Plaintiff had not performed substantial gainful activity since November 15, 2012.

6    AR 14.

7         At step two, the ALJ must determine, based on medical findings, whether the claimant has

8    a "severe" impairment or combination of impairments as defined by the Social Security Act.  20

9    C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20

10   C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe

11   impairments: anxiety disorder and marijuana dependence.  AR 14.

12        If the ALJ determines that the claimant has a severe impairment, the process proceeds to

13   step three, where the ALJ must determine whether the claimant has an impairment or combination

14   of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P,

15   Appendix. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment either meets the listed

16   criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is

17   conclusively presumed to be disabled, without considering age, education and work experience.

18   20 C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or

19   combination of impairments that meets the listings.  AR 15.

20        Before proceeding to step four, the ALJ must determine the claimant's Residual Function

21   Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work

22   setting, despite mental or physical limitations caused by impairments or related symptoms.  20

23   C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the

24   claimant's medically determinable impairments, including the medically determinable

25   impairments that are nonsevere.  20 C.F.R. § 404.1545(e).  Here, the ALJ determined that Plaintiff

26   "has the RFC to perform a full range of work at all exertional levels but with the following

27   limitations: He can perform simple, routine tasks; can have occasional interaction with coworkers

28

United States District Court
Northern District of California

9

and supervisors; and should have no public contact."  AR 16.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. § 404.1520(a)(iv)(4), (f).  Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4) (iv).  Here, the ALJ determined that Plaintiff had no past relevant work.  AR 21.

Finally, in  step five of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§  404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the requirements of representative occupations such as machine feeder, industrial cleaner, and vehicle cleaner, and that all such jobs exist in significant numbers in the national economy.  AR 22-23.

**D.      ALJ's Decision and Plaintiff's Appeal**

On April 9, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  AR 23.  This decision became final when the Appeals Council declined to review it on July 14, 2014.  AR 1-6.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On January 12, 2015, Plaintiff filed the present Motion for Summary Judgment.  Dkt. No. 15.  On February 17, 2015, the Commissioner filed a Cross-Motion for Summary Judgment.  Dkt. No. 19.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

United States District Court
Northern District of California

10

1   substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*,

2   246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a

3   scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

4   adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

5   (quoting *Jamerson v. Chater*, 112 F.3d 1064. 1066 (9th Cir. 1997), *Flaten v. Sec'y of Health &*

6   *Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the administrative

7   record as a whole, weighing the evidence that both supports and detracts from the ALJ's

8   conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  However, "where the

9   evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's

10   decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Determination of credibility,

11   resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the

12   ALJ. *Id.*

13          Additionally, the harmless error rule applies where substantial evidence otherwise supports

14   the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).  A court may not

15   reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d

16   1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

17   (9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party

18   attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

19   (2009)).

20                                           **DISCUSSION**

21          In his Motion, Plaintiff raises three issues: (1) the ALJ failed to properly weigh the medical

22   evidence; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ relied on

23   flawed vocational expert testimony.  The Court shall consider each in turn.

24   **A.     Medical Opinions of Record**

25          In determining Plaintiff's RFC, the ALJ stated that she gave "great weight" to the "overall

26   mental health treatment records, which indicate that the claimant has good response medications

27   and he has none to mild functional impairments."  AR 19.  She gave "some weight" to the opinion

28                                                  11

United States District Court
Northern District of California

of Dr. Colsky, one of the non-examining state agency medical consultants. AR 19. The ALJ gave "less weight" to the opinion from treating psychiatrist Dr. Hanlin. AR 20. She found that the record did not substantiate Dr. Hanlin's opinions because there was an indication that Plaintiff only missed two appointments, which did not establish problems remembering appointments as described. AR 20. The ALJ also noted that Dr. Hanlin only treated Plaintiff on two occasions and found the mental status examinations did not provide support for his opinions. AR 20. In support of this finding, the ALJ found no evidence that progress notes recorded poor insight, judgment, or impulse control. AR 20. She also noted that Plaintiff had a GAF score of 58, indicating "mild functional impairments." AR 20. The ALJ also gave "less weight" to the opinion from the consultative psychologist, Dr. Collins. AR 20. The ALJ noted that Dr. Collins only evaluated Plaintiff on one occasion and did not review his treatment records, which she believed did not support the restrictions found. AR 20. The ALJ also found Dr. Collins' mental status examination did not support her opinions. AR 20. Finally, the ALJ noted that Plaintiff told Dr. Collins he did not use marijuana when the record showed otherwise. AR 20.

Plaintiff argues that the ALJ's rejection of the opinions from the treating psychiatrist Dr. Hanlin and examining psychologist Dr. Collins in favor of the opinions from a non-examining consultant was error in light of the record as a whole. Pl.'s Mot. at 9. Specifically, Plaintiff notes that Dr. Hanlin stated his opinions were based on Plaintiff's symptoms and mental status findings, which revealed anxiety, panic attacks, anticipatory anxiety, social avoidance, excessive worry, difficulty with memory, mildly pressured speech at times, and a history of hallucinations. *Id.* (citing AR 459-61). Plaintiff maintains that these findings are consistent with the treatment records that "consistently documented loud and pressured speech, an anxious and depressed mood and affect, thinking centered on triggers of panic attacks, and decreased insight/judgment and decreased impulse control. *Id.* at 10 (citing AR 439-40, 446, 480-81, 487, 491, 527-28, 531, and 535). Therefore, Plaintiff argues that Dr. Hanlin's opinion is supported by appropriate clinical and diagnostic psychiatric findings throughout the period at issue. *Id.*

Plaintiff further argues that the ALJ failed to identify substantial evidence contradicting

12

United States District Court
Northern District of California

Dr. Hanlin's opinion.  *Id.*  While she suggested that greater weight was given to the "mental health treatment records" (AR 19), Plaintiff maintains that the abnormalities in the records are consistent with the findings identified by Dr. Hanlin as supporting the restrictions he found.  *Id.*  To the extent the ALJ believed the lack of restrictions in the notes themselves indicated that Plaintiff did not have greater restrictions than found, Plaintiff contends that there is a distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work.  *Id.*  The primary function of medical records, the Plaintiff argues, is to promote communication and recordkeeping for health care personnel, not to provide evidence for disability determinations.  *Id.*

Plaintiff also contends that the ALJ erred by finding that the treatment records did not substantiate Dr. Hanlin's opinion because Plaintiff had only missed a couple of appointments, arguing that this ignores evidence that his girlfriend helps him remember his appointments and medications.  *Id.* (citing AR 459, 527).  He also opposes the ALJ's finding that progress notes did not indicate poor insight, judgment, or impulse control (AR 20) is directly contradicted by the treatment records.  *Id.* (citing AR 481, 487, 491, 527, and 535).  Plaintiff also notes that Dr. Hanlin's opinion is consistent with that of examining psychologist Dr. Collins, who evaluated Plaintiff at the request of the ALJ.  *Id.* at 12.  Although the ALJ noted that Dr. Collins only evaluated Plaintiff on one occasion and did not review his treatment records (AR 20), Dr. Collins' examination nonetheless revealed neglected grooming and hygiene, difficulties following directions due to poor comprehension, rambling and loud speech, a blunted affect, an anxious mood, disorganized thought processes, disorientation to time, impaired memory, poor insight, and fair judgment (AR 501), findings which Plaintiff maintains are consistent with those from the treating sources at Contra Costa Medical Services.  *Id.*

Finally, Plaintiff argues that, while the ALJ gave greater weight to Rose Lewis, M.D., a non-examining state agency medical consultant (AR 19), opinions from non-examining physicians are not, standing alone, substantial evidence that justifies the rejection of opinions from treating physicians.  *Id.* at 11.  He argues that Dr. Hanlin's opinion is supported by appropriate clinical and

13

1   diagnostic psychiatric findings documented throughout the period at issue and should therefore be

2   given controlling weight.  *Id.*

3          In response, Defendant argues that the ALJ made a reasoned decision supported by

4   substantial evidence in the record.  Def.'s Mot. at 1.  Defendant notes that it is the ALJ's duty to

5   translate information regarding Plaintiff's impairments and symptoms into an assessment of his

6   capacity to work.  *Id.*  And when presented with conflicting medical evidence, it is solely the

7   ALJ's responsibility to resolve the conflict.  *Id.* at 2.  Although the ALJ was presented with

8   conflicting opinions, Defendant maintains that the ALJ properly found that, of the opinions of

9   record, Dr. Colsky's opinion was more consistent with the record as a whole.  *Id.*

10         1.    Legal Standard

11         When determining whether a claimant is disabled, the ALJ must consider each medical

12   opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b);

13   *Zamora v. Astrue*, 2010 WL 3814179, at *10 (N.D. Cal. Sept. 27, 2010).  In deciding how much

14   weight to give to any medical opinion, the ALJ considers the extent to which the medical source

15   presents relevant evidence to support the opinion.  20 C.F.R. § 416.927(c).  Generally, more

16   weight will be given to an opinion that is supported by medical signs and laboratory findings, and

17   the degree to which the opinion provides supporting explanations and is consistent with the record

18   as a whole.  *Id.*

19         In conjunction with the relevant regulations, the Ninth Circuit "[has] developed standards

20   that guide the analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of Soc. Sec.*,

21   528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the

22   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

23   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

24   examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

25   (9th Cir. 1995).  "By rule, the Social Security Administration favors the opinion of a treating

26   physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing

27   20 C.F.R. § 404.1527).  If a claimant has a treatment relationship with a provider, and that

28

United States District Court
Northern District of California

14

United States District Court
Northern District of California

provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight.  20 C.F.R. § 416.927(c)(2).  "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given."  *Orn*, 495 F.3d at 631.  "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician."  *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

"Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record."  *Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)).  Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at 632 (citing SSR 96–02p[13] at 4).  Indeed, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-02p at 4.

///

---

[13] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); 20 C.F.R. § 402.35(b)(1).  The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations."  *Chavez v. Dept. of Health and Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996).

2.        Application to the Case at Bar

Here, there appears to be no dispute that Dr. Hanlin is Plaintiff's treating physician.  A review of her decision shows that the ALJ reviewed the entire record, and considered the medical evidence and all the opinions of record.  AR 15-21.  Of the opinions of record, the ALJ found that Dr. Colsky's opinion was more consistent with the record as a whole.  AR 19, 70-80.  Opinions of a reviewing physician can constitute substantial evidence supporting an ALJ's decision if it is supported by other independent evidence or record.  *See* 20 C.F.R. § 416.927(e); *Bray v. Astrue*, 554 F.3d at 1221, 1227; *Thomas v. Barnhart*, 278 F.3d at 957 ("The opinions of nontreating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").  The Court finds that the ALJ's decision is supported by substantial evidence.

Dr. Colsky opined that Plaintiff is not significantly limited in the ability to understand, remember and carry out very short and simple instructions; is moderately limited in the ability to understand, remember and carry out detailed instructions; is moderately limited in the ability to interact appropriately with the general public; is not significantly limited in the ability to accept instructions and respond appropriately to criticism from supervisors, and is not significantly limited in the ability to get along with coworkers or peers.  AR 19-20, 76-79.

In accepting this opinion, the ALJ gave some weight to the medical evidence of record.  AR 19.  The ALJ outlined this evidence in her opinion, including Plaintiff's treatment at Contra Costa Mental Health, and then at Pittsburg Mental Health.  AR 17-19, 438-57, 464-67, 479-92.  The ALJ outlined a relatively unremarkable mental status exam on March 9, 2011, with linear thought process, relatively well attitude, intact memory and concentration, but loud and somewhat pressured speech.  AR 18, 439-40.  The ALJ also noted other mental status exams that were largely unremarkable.  AR 18, 456, 480-81, 487.  These reports showed signs of depression; after a brief time, however, Plaintiff felt better.  AR 18, 487.  These mental status exams were properly noted by the ALJ and showed that the objective evidence supported generally unremarkable findings and did not support a finding of disabling mental health symptoms.

1    Second, the ALJ noted that mental health medications largely worked.  AR 18-21.

2    Plaintiff stated and doctors reported the medication was working on September 7, 2011 (AR 18,

3    448), that he was doing "reasonably well" on March 14, 2012 (AR 18, 452), and had good

4    response to medication again on June 5, 2013 (AR 19, 481).

5    Third, the ALJ also noted a June 5, 2013 treatment record where Plaintiff's own doctor

6    opined that "aspect of [Plaintiff's] presentation exaggerates report of symptoms greater than

7    appears in mental status exam."  AR 19, 482.  The ALJ considered this evidence as part of

8    Plaintiff's inconsistent statements, including admissions he looked for work, could take care of all

9    his personal needs, did chores, was writing a novel, and attempted to take an online psychology

10   course by going to the library for two to three weeks.  AR 15, 19, 39, 422, 488.

11   The ALJ also provided reasons to give less weight to the opinions of Drs. Hanlin and

12   Collins.  AR 20.  Dr. Hanlin noted that Plaintiff "may expect more improvement with time,"

13   finding that Plaintiff was alert, cooperative, had adequate recall and recently stable mood, but had

14   a history of hallucinations (with no indication of present hallucinations) and waivered.  AR 459-

15   63.  The ALJ noted how, given the mental status exam, a more restrictive opinion than the ALJ's

16   RFC would be inconsistent and unsupported.  AR 20.  While a medical condition need not be

17   mentioned in every report to conclude that a physician's opinion is supported by the record, *Orn*,

18   495 F.3d at 634, the incongruity between a physician's statement and medical records provides a

19   "specific and legitimate" reason for rejecting a physician's opinion.  *Tommasetti v. Astrue*, 533

20   F.3d 1035, 1041 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31).

21   The ALJ also noted that Dr. Hanlin's exam appeared to rely too much on Plaintiff's

22   subjective complaints.  AR 20.  Indeed, much of Dr. Hanlin's diagnosis is stated in what Plaintiff

23   "reports," which makes it difficult to discern what is Dr. Hanlin's opinion versus his recording of

24   Plaintiff's complaints.  AR 20, 459-63.  Dr. Hanlin's treatment records also fail to support his

25   finding that Plaintiff suffered from significant functional limitations.  *See Connett v. Barnhart*,

26   340 F.3d 871, 875 (9th Cir. 2003) (treating doctor's opinion properly rejected when treatment

27   notes "provide no basis for the functional restrictions he opined should be imposed on

28                                                    17

United States District Court
Northern District of California

1   [claimant]"); *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d at 692-93 (contradiction between

2   treating physician's opinion and his treatment notes constitutes specific and legitimate reason for

3   rejecting treating physician's opinion); *Tommasetti*, 533 F.3d at 1041 (incongruity between

4   medical records and opinion provided specific and legitimate reason for rejecting treating

5   physician's opinion); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)

6   ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported

7   by the record as a whole . . . or by objective medical findings"); *Rollins v. Massanari*, 261 F.3d

8   853, 856 (9th Cir. 2001) (ALJ permissibly rejected treating physician's opinion when opinion was

9   contradicted by or inconsistent with treatment reports).

10       The ALJ's decision also points out the inconsistency with Dr. Hanlin's report that Plaintiff

11   had a difficult time going to appointments.  AR 20.  Although Plaintiff notes that he usually made

12   his appointments because he was reminded by his girlfriend, the record is also clear that Plaintiff

13   was able to keep appointments even after his girlfriend had moved out.  AR 18, 456.

14       As to Dr. Collins' diagnosis, the ALJ noted that Dr. Collins opined quite severe

15   restrictions, including marked restrictions in ability to respond to usual work situations and to

16   changes in work setting, as well as interaction with public, supervisors, and coworkers.  AR 20.

17   However, the ALJ found that these opinions were not supported by the medical record; further, Dr.

18   Collins did not review the record and received subjective information from Plaintiff that was

19   inaccurate – namely, that he did not do drugs, whereas the record clearly shows Plaintiff regularly

20   uses marijuana.  AR 20, 501.

21       The Court finds that this record constitutes substantial evidence supporting the ALJ's

22   decision to give Drs. Hanlin's and Collins' opinions little weight.  Further, when presented with

23   conflicting medical evidence, including medical opinions, it is solely the ALJ's responsibility to

24   resolve the conflict.  *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d at 601 ("Where medical reports

25   are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions

26   solely of the [ALJ].'"); *Magallanes v. Bowen*, 881 F.2d at 750 ("The ALJ is responsible for

27   determining credibility and resolving conflicts in medical testimony.").  Thus, because the ALJ

28

United States District Court
Northern District of California

18

properly considered each medical opinion and found that Drs. Hanlin's and Collins' opinions were not supported by the record as a whole, the Court must uphold the ALJ's decision.

**B.     Plaintiff's Credibility**

In her decision, the ALJ conceded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found his statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely credible."  AR 17.  She found that "mental status examinations have been mostly unremarkable when he has been medication compliant."  AR 21.  The ALJ also found that Plaintiff had a good response to medications, found his allegations inconsistent with evidence he took an online course in the library for two to three weeks, that he made conflicting statements about marijuana use, and that he told his psychiatrist he was looking for a job.  AR 21.

Plaintiff argues that the ALJ failed to provide "clear and convincing" reasons for finding his testimony not credible.  Pl.'s Mot. at 14-15.  He maintains that the mental status examinations – conducted during the periods when he consistently took his medication, which was through most of the relevant period at issue – were far from "unremarkable." *Id.* at 15.  Plaintiff further argues that there is a lack of evidence that he significantly improved with use of his medications. *Id.*  He notes that, even with a modest response to medications, he continued to suffer from significant anxiety and panic attacks. *Id.* (citing AR 41-42, 52, 442, 446, and 531).  As to the online course he took, Plaintiff notes that the ALJ fails to mention that he could not complete this course to his mental problems. *Id.* (citing AR 44, 48).  As to his drug use, Plaintiff argues it is unclear how any inconsistent statements are relevant since the ALJ did not find his marijuana use was a material cause of his disability. *Id.*  Finally, as to his statement that he was looking for a job, Plaintiff argues that whether he wishes to obtain a job does not mean that he has the ability to maintain a full-time competitive position. *Id.* at 16.

In response, Defendant argues that numerous inconsistencies exist supporting the ALJ's decision that Plaintiff's allegations were not fully credible.  Def.'s Mot. at 7.  Thus, even if one of the ALJ's reasons for discrediting testimony is found invalid, the Court must still uphold the

ALJ's decision.  *Id.* at 8.

        1.    <u>Legal Standard</u>

      A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

      Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (quoting *Smolen*, 80 F.3d at 1281).  "The ALJ must state specifically which testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

      Factors that an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the

United States District Court
Northern District of California

symptoms of which claimant complains." *Thomas*, 278 F.3d at 958-59.  Here, the ALJ properly considered these factors in making an adverse credibility finding: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment." AR 17.  While the failure of the medical record to fully corroborate a claimant's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony, it is a factor that the ALJ may take into account when making a credibility determination.  *Rollins*, 261 F.3d at 856.  Thus, the Court finds that the ALJ did not err when she considered the lack of objective evidence and objective functional restrictions as a factor in assessing Plaintiff's credibility.

2.      Application to the Case at Bar

Here, the Court finds that ALJ properly rejected Plaintiff's testimony with specific, clear and convincing reasons for doing so.  An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas*, 278 F.3d at 958  (citing *Bunnell*, 947 F.2d at 345-46).  At the same time, "[a]n ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]."  *Fair v. Bowen*, 885 F.2d at 603.

In this case, the ALJ noted treatment records that indicate Plaintiff exaggerates his symptoms; further, parts of the treatment records show Plaintiff, at times, states he regularly uses marijuana, and other times states he does not use marijuana as a drug or medication.  AR 21, 42, 47, 285, 422, 427, 501.  In finding a plaintiff not credible, it is proper to consider treatment records of exaggeration.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (noting evidence of symptom exaggeration is a valid basis for discounting a claimant's claims of disability).  Further, despite Plaintiff's claim that his drug use was not relevant, his tendency not to be consistent regarding his drug use is relevant to his credibility.  *See Thomas*, 278 F.3d at 959 (finding an ALJ

United States District Court
Northern District of California

may discredit a claimant when the record "presents conflicting information about her drug and alcohol usage.").

The ALJ also noted other inconsistencies in the record.  For example, Plaintiff claimed at the hearing that medications had side effects and were not working.  AR 21.  However, Plaintiff's own treating doctors noted a good response to medication and no side effects.  AR 21, 454, 456.  Similarly, Plaintiff stated he did not like to be around people, but the record indicates he went to the library for online classes and talked with his doctors about looking for work.  AR 21.

Taken as a whole, the Court finds that these provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.  Further, even if one of the ALJ's credibility reasons is invalid, the Ninth Circuit has held that the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination* . . . ."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (emphasis original); *see also Batson*, 359 F.3d at 1197 (even if one of the ALJ's reasons for discrediting testimony is found invalid, the ALJ's decision must still be upheld if otherwise supported by substantial evidence such that the error was harmless and the error "does not negate the validity of the ALJ's ultimate conclusion.").  Accordingly, no reversible error was committed.

## C.    Vocational Expert

Finally, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, and reliance on the vocational expert's testimony in response to the RFC therefore cannot meet the Commissioner's burden of proof that there is work Plaintiff can perform.  Pl.'s Mot. at 16.  Plaintiff further argues that the ALJ failed to present a hypothetical to the vocational expert that accurately described all of his mental limitations.  *Id.*  Specifically, Plaintiff argues that Dr. Colsky found that he had moderate restrictions in maintaining a regular work schedule, including concentration, persistence or pace, yet the ALJ did not include this restriction in the accepted hypothetical to the vocational expert.  *Id.* at 18.

In response, Defendant argues that the ALJ's hypothetical mirrored her RFC, and thus, the ALJ properly accepted the vocational expert's testimony.  Def.'s Mot. at 5, 8.

1

### 1.   Legal Standard

The fifth step in the sequential analysis requires the ALJ to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistently with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).  There are two ways to meet this burden: (1) the testimony of a vocational expert, or (2) reference to the Medical-Vocational Guidelines.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

"[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy."  *Id.* at 1101.  "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration."  *Id.* (quoting *Gamer v. Sec'y of Health and Human Servs.*, 825 F.2d 1275, 1279 (9th Cir. 1987)).  The vocational expert then testifies as to what kinds of jobs the claimant can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled.  *Id.* (citation omitted).

"The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  *Id.* (citation omitted).  However, the ALJ need only include those impairments supported by substantial evidence.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).  If the ALJ does not include all claimed impairments in his hypothetical, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included.  *Light*, 119 F.3d at 793.  Consequently, "if the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

### 2.   Application to the Case at Bar

Here, the ALJ determined that Plaintiff "has the RFC to perform a full range of work at all

United States District Court
Northern District of California

23

1   exertional levels but with the following limitations: He can perform simple, routine tasks; can

2   have occasional interaction with coworkers and supervisors; and should have no public contact."

3   AR 16.  The ALJ presented this RFC as a hypothetical to the vocational expert, who testified that

4   Plaintiff could work as a machine feeder, an industrial cleaner, and a vehicle cleaner based on the

5   testimony from the vocational expert.  AR 53-54.

6          As to Plaintiff's first argument regarding the RFC determination, it is the ALJ's

7   responsibility, not that of a physician, to determine RFC.  *Vertigan v. Halter*, 260 F.3d 1044, 1049

8   (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).  RFC is based on the record as a whole.  *Richardson*

9   *v. Perales*, 402 U.S. 389, 401 (1971).  Thus, it is the ALJ's duty to translate information regarding

10  Plaintiff's impairments and symptoms into an assessment of his capacity to work.  *Stubbs-*

11  *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  As discussed above, the ALJ in this

12  case reviewed the entire record, considering the medical evidence and opinions therein, and

13  properly determined an RFC that was supported by independent medical evidence.  While Dr.

14  Colsky noted moderate difficulties in maintaining concentration, persistence, or pace, Dr. Colsky

15  ultimately determined that Plaintiff was not disabled and could perform work in the national

16  economy, including past relevant work as a garbage collector.  AR 76, 79-80.

17         Further, as the ALJ determined that Plaintiff has a mental impairment, she properly

18  performed the "special technique" at step 3 to determine whether that mental impairment meets a

19  listing, as outlined on the Psychiatric Review Technique Form ("PRFT").  20 C.F.R. §§

20  416.920(d), 416.920a.  After completing a PRFT analysis, and only if the ALJ determines the

21  claimant does not meet a listing under step 3, the ALJ will proceed to analyze the claimant's RFC.

22  20 C.F.R. §§ 416.920(d), 416.920(e), 416.920a(3).  After determining that Plaintiff did not meet a

23  listing, the ALJ went on to review the record as a whole and made a finding regarding Plaintiff's

24  RFC.  As that determination is consistent with medical opinions and the overall record, she

25  appropriately determined Plaintiff could perform his past work after consulting with the vocational

26  expert.

27         As to Plaintiff's second argument regarding the hypothetical posed to the vocational

28                                              24

United States District Court
Northern District of California

expert, the Court finds no error in the ALJ's decision not to include specific language from Dr. Colsky's opinion.  As noted above, Dr. Colsky noted moderate limitations in concentration, persistence or pace.  AR 76.  But Dr. Colsky also found that Plaintiff is not disabled and can perform simple routine tasks with *limited* public contact.  AR 75.  This is consistent with (and even less restrictive than) the ALJ's hypothetical, which limits Plaintiff to routine tasks with *no* public contact.  AR 16.

**CONCLUSION**

For the reasons stated above, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: June 3, 2015

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

25